**WALLING CHEMICAL COMPANY, a South Dakota Corporation, Plaintiff,**

v.

**David A. HART, a Nebraska resident, Defendant.**

Civ. No. 81–0–49.

United States District Court, D. Nebraska.

Feb. 27, 1981.

Dennis E. Martin and Steven Achelpohl, Omaha, Neb., for plaintiff.

H. Daniel Smith, Omaha, Neb., for defendant.

## MEMORANDUM AND ORDER

DENNEY, District Judge.

This matter comes before the Court upon the defendant's motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Filing # 9].

A brief review of the facts is warranted. The plaintiff, Walling Chemical Co., is a South Dakota corporation which manufactures and markets pollution control products and related services. Its business activities are primarily concentrated in the Midwest region of the United States. The defendant, David A. Hart, is a Nebraska resident who worked for the plaintiff as a sales representative from October, 1978, until early January, 1981. Upon leaving the plaintiff's employ, the defendant went to work for one of plaintiff's competitors in a similar sales capacity.

This lawsuit involves interpretation and enforcement of the employment contract which the defendant signed when he went to work for the plaintiff in 1978. A copy of this contract is attached as Exhibit "A" to plaintiff's complaint [Filing # 1]. At issue in this case are the noncompetition and secrecy portions of the contract. The noncompetition clauses generally provide that, for a period of one year following termination of his employment with the plaintiff, the defendant shall not associate in any way with the plaintiff's competitors. The restrictive clauses are limited in scope to the defendant's business activities within a twenty-five mile radius of his assigned south-eastern Nebraska sales territory. The secrecy clauses of the employment contract are much broader. That is, without limitation as to duration, geography, or type of business activity, the defendant agreed never to divulge confidential information acquired during the course of his employment with the plaintiff.

As mentioned before, the defendant terminated his association with the plaintiff in early January, 1981, in order to go to work for one of plaintiff's competitors. On January 27, 1981, the plaintiff filed suit in this Court seeking injunctive relief. The Honorable Albert G. Schatz, United States District Judge, granted plaintiff's request for a temporary restraining order subsequent to a hearing on February 3, 1981 [Filing # 5]. Hearing on plaintiff's application for a preliminary injunction was scheduled for February 13, 1981, before this Court. Prior to the scheduled hearing, an informal conference was held with the parties' attorneys. During the in-chambers conference, defendant's attorney stated that he wished to file a Rule 12(b)(6) motion to dismiss. It was agreed that the attorneys should brief the proposed motion to dismiss and obtain a ruling from the Court thereon before a hearing on the temporary injunction application was held. All briefs relative to the defendant's motion were submitted by February 19, 1981.

The defendant's motion to dismiss addresses only the noncompetition clauses of the parties employment contract.[1] It is the defendant's position that the plaintiff is not entitled to injunctive relief because the noncompetition clauses are invalid in light of the terms of the contract and South Dakota legislation. The employment agreement states that it is made pursuant to and is to be construed by the provisions of *S.D. Compiled Laws Ann.* § 53–9–11. That statute provides:

*Employment contract—Employee's agreement to refrain from engaging in same business as employer.* An employee may agree with an employer at the time of employment or at any time during such employment not to engage directly

---

1. The defendant has brought to the Court's attention a decision made in a case similar to this one by a South Dakota state court judge on February 2, 1981. That case involved a suit by Walling Chemical Company against two of its former South Dakota salespersons. Judge Robert C. Heege refused to enforce the noncompetition clause of the Walling Chemical Company employment agreement, but did accord the plaintiff-employer injunctive relief in regard to the secrecy clauses. Since the defendant implies that Judge Heege properly disposed of that case, the Court will assume for the remainder of these proceedings that defendant does not contest enforceability of the secrecy clauses.

or indirectly in the same business or profession as that of his employer for any period not exceeding ten years from date of such agreement and within any specified territory not exceeding a radius of twenty-five miles from the principal place of business of the employer, as specified in such agreement, *but such contracts between employee and employer shall apply only to those engaged in some profession, the practitioners of which must be duly licensed in the state of South Dakota.*

S.D. Compiled Laws Ann. § 53–9–11 (1980 Revision) (emphasis added). Since sales representatives such as the defendant are not engaged in any profession licensed by the State of South Dakota, the statutory reference makes the noncompetition portion of the employment contract a glaring *non sequitur.*

If the employment contract had been both executed and expected to be performed substantially in the State of South Dakota, then there would be very little real controversy. That is, the statutory provisions would control over the patently ambiguous contract provisions, and the noncompetition agreement would be unenforceable.[2] Unfortunately, this case is not so simple. There are two problems. First, the employment contract at issue here was both signed by the defendant and expected to be performed entirely by him in Nebraska, not South Dakota. Secondly, this is a diversity action and, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the Court should apply the substantive law of Nebraska unless there is a good reason to do otherwise. In contrast to South Dakota, contracts such as this are often enforced in Nebraska, i. e.,

there is no statute barring their use and the case law indicates that generally such contracts are valid. *See Diamond Match Division of Diamond International Corp. v. Bernstein*, 196 Neb. 452, 455–56, 243 N.W.2d 764, 766 (1976) (hereinafter cited as "*Diamond Match.*")

■ The foregoing discussion illustrates an obvious conflict of law problem. The parties agree that the law of the place of the forum (Nebraska) governs the choice of law question. The plaintiff maintains and the defendant is willing to concede that the contract in this case was executed and expected to be performed in Nebraska. And, it is clear that "[c]ontracts in restraint of trade must conform to the public policy of the State of Nebraska when executed or expected to be performed in this state . . . ." *Diamond Match, supra*, 196 Neb. at 455, 243 N.W.2d at 766.

In the context of his motion to dismiss, though, the defendant asserts that the Court need not reach the issue of whether the parties' contract is enforceable under Nebraska law. Instead, defendant says, since the contract itself says it is governed by South Dakota law, and since the South Dakota statute clearly invalidates the noncompetition clause, the analysis need not proceed any further.[3]

The plaintiff, in attempting to salvage the remains of what at best has to be viewed as a poorly researched and drafted contract, urges that the Court should ignore the problematic reference to the South Dakota statute. Plaintiff asserts that the inherently inconsistent noncompetition provision was a drafting mistake and that therefore it should not be given effect since such a construction would frustrate the parties'

2. This apparently is the conclusion that Judge Heege came to in the South Dakota state court case involving the plaintiff's attempt to enforce an identical employment contract against two of its former South Dakota sales representatives.

3. Defendant reads *Diamond Match* as creating a two-tier test which a plaintiff must satisfy in Nebraska court in order to enforce a contract which stipulates that the law of another state shall govern. That is, plaintiff must first estab-

lish that the contract is valid under the law of the other state. If this is sufficiently established, only then may the court proceed to determine whether the contract violates the public policy of the State of Nebraska. This, in a general sense, is probably a fair construction of the *Diamond Match* decision. But, as specifically applied to the instant case, the analysis is not so rigid, i. e., other factors need to be considered, such as the intent of the parties.

obvious contractual intent, to wit, to limit the defendant's business activities in the event that they severed their business relationship. In support of this contract interpretation, plaintiff cites a part of the commentary to Section 187 of the *Restatement (Second) of Conflict of Laws*, which provides:

> On occasion, the parties may choose a law that would declare the contract invalid. In such situations, the chosen law will not be applied by reason of the parties' choice. To do so would defeat the expectations of the parties which it is the purpose of the present rule to protect. *The parties can be assumed to have intended that the provisions of the contract would be binding upon them* (cf. § 188, Comment b). If the parties have chosen a law that would invalidate the contract, it can be assumed that they did so by mistake.

*Restatement (Second) of Conflict of Laws* § 187, Comment e (1971) (emphasis added). Plaintiff also contends that Nebraska case law is in accord with the Restatement commentary, citing *Farm Mortgage & Loan Co. v. Beale*, 113 Neb. 293, 202 N.W. 877 (1925). It should be mentioned that, while *Beale* contains general language favorable to plaintiff's argument, that case is not as directly on point as plaintiff would have the Court believe.[4]

█ The defendant has failed to discuss the pertinence of the Restatement commentary to the case at bar. Instead, defendant maintains that, under the *Beale* rule, there is no indication in the parties' employment contract that South Dakota law should not apply. The Court believes that the defendant's argument in this regard is somewhat tenuous. At best, the contract conclusively indicates the parties' intent to restrict the defendant's business activities upon terminating his association with the plaintiff. That is, the reference to the problematic South Dakota statute appears to the Court as an obvious drafting blunder. It would be ludicrous to exalt that mistake over the parties' contractual intent. At the very least, there may be a factual question as to the parties' intent. This, too, of course, would serve to bar the defendant's motion to dismiss.

The Court concludes that the instant motion should not be granted. This matter, therefore, should proceed to a full hearing on plaintiff's application for a temporary injunction. At that hearing, the defendant may wish to offer evidence showing that the parties actually intended the South Dakota statute to govern their contract, even though application of the statute would effectively serve to void the noncompetition portion of the employment contract. While the defendant is free to offer such evidence, the Court feels that he would fare better by abandoning this avenue of defense. In the Court's opinion, the preliminary injunction hearing would be more productive and useful if both plaintiff and defendant focus on developing the facts in accordance with the legal parameters established in the Nebraska Supreme Court's *Diamond Match* decision.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. That the defendant's Rule 12(b)(6) motion to dismiss is denied; and

2. That hearing on plaintiff's application for a preliminary injunction will be held in Court Room No. 2, United States Post Office & Court House, Omaha, Nebraska, at a time and date certain when the Court's schedule permits.

---

4. In *Beale*, the Nebraska Supreme Court stated:

> Where two or more parties, residing in different states, enter into a contract, it is competent for them to select the laws of either state to govern their contract. When, by the terms of the contract, they have fixed and determined upon the place for its performance, ordinarily, the law of that place will govern, *unless a contrary intention is made to appear.*

*Farm Mortgage & Loan Co. v. Beale, supra,* 113 Neb. at 295–96, 202 N.W. at 878. The Court concedes that the general rule in *Beale* seems to be in harmony with the commentary to Section 187. It may be important to note, however, that the Nebraska Supreme Court in *Beale* was not specifically concerned with a contract where the parties made an express (yet inconsistent) stipulation as to the governing law.